**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**USAA CASUALTY INSURANCE COMPANY, as subrogree of Arthur Ammermuller, Suzanne Cerabone, Jeanne Ammermuller, Erica Ammermuller, Allison Ammermuller, and Christopher Wood,**

**Plaintiff,**

**v.** // **CIVIL ACTION NO. 1:10CV115**
**(Judge Keeley)**

**PAUL GARRETT SMITH, d/b/a P.H. One Trucking, P.H. ONE TRUCKING, DAVID S. GILB, JOHN DOE MECHANIC, and JOHN DOE BRAKE REPAIR SHOP, INC.,**

**Defendants.**

**ORDER/OPINION GRANTING PLAINTIFF'S MOTION TO COMPEL**

This case is before the undersigned United States Magistrate Judge pursuant to a Motion to Compel Discovery filed by Plaintiff USAA Casualty Insurance Company ("USAA") on February 27, 2012 [D.E. 39]. Defendants Paul Garrett Smith, d/b/a P.H. One Trucking, P.H. One Trucking, and David S. Gilb ("Defendants") filed their Response to the Motion on March 7, 2012 [D.E. 43]. USAA filed its Reply on March 13, 2012 [D.E. 44]. The Motion was referred to the undersigned by United States District Judge Irene M. Keeley by Order entered March 1, 2012 [D.E. 40].

According to the Complaint, this case arises from an automobile accident that occurred on July 30, 2008, when a tractor trailer operated by the defendant David S. Gilb and owned by the defendant Paul Garrett Smith d/b/a P.H. One Trucking lost its breaks and collided with a sedan owned by Suzanne Cerabone and occupied by Erica Ammermuller, Allison Ammermuller, Arthur

Ammermuller, and Christopher Wood ("the Ammermullers, Cerabone, and Wood") as they were stopped on the Exit 10 ramp off of Interstate 68 in Monongalia County, West Virginia.

As a result of this accident, Mr. Ammermuller, Ms. Cerabone, and Mr. Wood submitted a claim to the plaintiff, USAA Casualty Insurance Co. ("USAA"), their insurer, under Arthur Ammermuller's insurance policy. USAA has paid to these insureds the sum of **$64,901.49** for damage to the vehicle and the contents therein, uninsured motorist benefits, and PIP payments.

Also as a result of the accident, Erica Ammermuller and Allison Ammermuller submitted a claim to USAA under Jeanne Ammermuller's insurance policy. USAA has paid to these insureds the sum of **$69,836.69** for damage to the vehicle and the contents therein, uninsured motorist benefits, and PIP payments.

The total amount of these payments made by USAA to its insured was **$134,738.18** at the time of the filing of the Complaint.

USAA seeks damages from the defendants as subrogee of the Ammermullers, Cerbone, and Wood.

The Complaint in this case was filed on July 28, 2010 [D.E. 1]. On June 6, 2011, the Court stayed this case pending the entry of final judgment in the underlying case, Ammermuller et al v. Smith et al, No. 1:10-cv-93. On October 31, 2011, the Plaintiffs in that case reached a global settlement with Defendants.

On November 28, 2011, USAA filed "Plaintiff's Motion for Declaratory Relief that Plaintiff USAA Casualty Insurance Company has a Legal Right of Subrogation for its Personal Injury Protection and Property Damage Payments" [D.E. 25]. Defendants filed a Response to that Motion,

arguing that the motion must be denied because: 1) it was premature, there being no scheduling order entered in this matter; 2) it was inappropriate as USAA had filed only a subrogation action and not a declaratory judgment action; and 3) USAA has no right to recover PIP benefits it paid to its insured under New Jersey statutory and case law.

Significantly, in their Response to USAA's Motion for Declaratory Relief, Defendants argue:

> If plaintiff has a right to subrogation for PIP benefits, which defendants deny, questions of fact must be resolved before plaintiff can seek the requested relief. It is widely accepted that the made whole doctrine requires that, except as otherwise provided by statute or contract, the insured must be made or kept whole before the insurer may recover under its right of subrogation . . . . Plaintiff failed to state any facts to support its assertion that the Ammermullers have been fully compensated through the settlement of their claims against these defendants. Furthermore, no discovery into the issue as to whether the Ammermullers were made whole has been conducted due to the orders continuing the preliminary deadlines in this civil action. Accordingly, questions of fact remain as to whether the Ammermullers have been fully compensated that necessitate further discovery and development in the event that a subrogation claim may be validly pursued by the plaintiff.

(Internal citations omitted).

On December 23, 2011, the Court granted USAA's request for a status conference "to set various deadlines and establish a briefing schedule" [D.E. 29]. On January 6, 2012, the Court held a status conference "to address the schedule in this case and also to hear argument regarding the motion for declaratory relief filed by the plaintiff . . ." The Court denied as moot the Motion for Declaratory Relief and ordered the parties to file any motions to join additional parties or motions to amend by February 6, 2012; complete all fact discovery by June 4, 2012; and file simultaneous dispositive motions on the legal issues discussed at the hearing on or before March 9, 2012.

USAA served its "First Set of Discovery to Defendants" on January 9, 2012 [D.E.32].

Defendants served their "Responses to First Set of Discovery" on February 22, 2012 [D.E. 37].

On February 3, 2012, USAA requested the Court grant an extension of time to add additional parties, "namely, the Ammermullers themselves." Defendants had no objection to the extension of time and the Court granted same, extending the deadline for joinder of parties to February 29, 2012 [D.E. 36].

On February 27, 2012, USAA filed its Motion to Compel. Both parties joined in a Motion to Vacate the Scheduling Order. The Court granted the motion to vacate both the scheduling order entered on January 11, and the deadline for adding additional parties. The Court scheduled a status conference for March 30, 2012, "at which time it will reschedule this case."

**The Motion to Compel**

In its Motion to Compel, USAA moves the Court to compel Defendants to respond in full to the discovery requests served on them on January 9, 2012, but in particular to Interrogatories 2 and 3 and Request for Production 2. The particular requests refer to information and documents regarding the settlement agreement between USAA's insureds, the Ammermullers, and Defendants.

Defendants respond that the Court should deny the motion to compel in its entirety because:

1. The parties have not yet conferred as required by Rule 26(f) of the Federal Rules of Civil Procedure;
2. The initial scheduling order was stayed pending resolution of a related trucking matter that was then pending;

3. Following resolution of the trucking matter, a new scheduling order was entered in this matter on January 11, 2012;

4. That scheduling order has now been vacated;

5. USAA filed its Motion to Compel only five days after Defendants served their Responses;

6. The Motion to Compel does not include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make discovery or discovery in an effort to obtain it without court action, and more importantly, did not make a good faith effort to meet in person or by telephone to narrow the areas of disagreement;

7. As part of the settlement agreement in a related Indiana State action, defense counsel in this matter will be replaced by counsel representing the Indiana state court plaintiff, and "[i]n fairness to all parties, the newly-appearing counsel for defendants should be permitted time to familiarize themselves with this matter and to develop their own defense strategy."

In its Reply, USAA concedes that a Rule 26(f) conference did not take place, but notes that the Court had nevertheless held a status conference and entered a scheduling order. Further, USAA represents that the topic of Defendants' refusal to produce the settlement agreement was discussed, and the Court was advised an informal request had been made and refused in the grounds of confidentiality. USAA represents that the Court refrained from addressing the issue "to allow time for a formal discovery request."

USAA also concedes it did not confer with Defendants in an attempt to work out the parties' differences before filing the motion to compel. At that time the deadline for adding or joining parties or amending the complaint was February 29, 2012. Although USAA filed a motion for extension

of time the same day as it filed its Motion to Compel, it had no way of knowing that request would be granted, as it was on March 5, 2012.

USAA further represents that after receiving Defendants' response, it did confer with Defendants' counsel asking if there were any circumstances under which Defendants would agree to produce the agreement. Counsel advised that, because new counsel would be taking over the case, this would be an issue for new counsel to address. Therefore, USAA argues it has no opportunity at this time to meet and confer in good faith with Defendants' counsel.

F.R.Civ.P 26(d) provides:

> A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when authorized by these rules, by stipulation, or by court order.

On January 6, 2012, the Court held a status conference "to address the schedule in this case and also to hear argument regarding the motion for declaratory relief filed by the plaintiff . . ." The Court denied as moot the Motion for Declaratory Relief and ordered the parties to file any motions to join additional parties or motions to amend by February 6, 2012; complete all fact discovery by June 4, 2012; and file simultaneous dispositive motions on the legal issues discussed at the hearing on or before March 9, 2012. The Court expressly authorized discovery to take place, and even set a deadline for the discovery. Defendants' argument regarding the discovery taking place prior to the Rule 26(f) hearing, as well as their arguments regarding the vacation of the scheduling order is therefore without merit.

Defendants are correct, and USAA agrees, that F.R.Civ.P. 37 requires a motion to compel to include "a certification that the movant has in good faith conferred or attempted to confer with the

person or party failing to make disclosure or discovery in an effort to obtain it without court action." It is also correct that L.R.Civ.P. 26.04 requires counsel for each party to make a good faith effort to meet in person or by telephone to narrow the areas of disagreement to the greatest possible extent." In fact, USAA concedes that at the time of the filing of the motion to compel the deadline was looming to add parties, and there was no time to meet and confer. The scheduling order was only vacated subsequent to the motion's having been filed. The undersigned has reviewed notes taken contemporaneously with Judge Keeley's hearing held January 6, 2012. Discussion was held regarding whether the Ammermullers were made whole and what the significance is of the Ammermullers' settlement with Defendants. In that regard, Judge Keeley expressly set a deadline of June 4th for fact discovery on the "made whole" issue. She also set a deadline for USAA to "bring in" the Ammermullers. It is clear to the undersigned that it was contemplated by the Court that discovery regarding the Ammermullers' settlement with USAA would be sought. USAA represents to the Court that it informally requested the settlement information, which request was refused. USAA further represents that the Court was advised an informal request had been made and refused on the grounds of confidentiality. When the formal requests were made, they were also refused on the basis of confidentiality. Finally, USAA did confer with Defendants' counsel following the response being filed. USAA represents that Defendants' counsel stated that new counsel was to be assigned and this matter should be taken up with them. This representation is corroborated by Defendants' response stating:

> In fairness to all parties, the newly-appearing counsel for defendants should be permitted time to familiarize themselves with this matter and to develop their own defense strategy.

This is the very rare case in which the Court will, in its discretion, find that a meet-and-confer would have been futile. The issue is the confidentiality of the information sought. Defendants have made quite clear that they would not produce the information. The Court therefore finds that the failure to meet and confer and the failure to certify said meet and confer does not doom USAA's motion to compel.

Finally, regarding the issue of new counsel's appearance, the Court notes only that Defendants advise in their response filed March 7, 2012: "A settlement agreement has now been reached in the Indiana state court matter" and that, "as part of the settlement of the Indiana state court matter, defendant counsel in this present matter will be replaced by counsel representing the Indiana state court plaintiff." Two weeks later, new counsel has yet to make an appearance. The Court is well aware of the length of time sometimes required to reach a full and final settlement. This case is nearly two years old. The accident on which the underlying complaint is based occurred nearly four years ago. Present counsel has represented Defendants in this matter since at least January 2011, 14 months ago. Present counsel attended the status conference of January 6, 2012, and present counsel represented Defendants at the time the responses to the discovery requests were served. The Court does not find any prejudice to Defendants by resolving this issue prior to new counsel appearing in this case.

Having decided that there are no procedural impediments to USAA's Motion to Compel, the Court addresses the merits of the motion. A review of the record indicates USAA paid its insureds, ("the Ammermullers") a total of $134,738.18, some time prior to the filing of the Complaint in 2010. A review of the underlying case, Ammermuller v. Smith 1:10cv93, indicates the same

insureds reached a global settlement with the defendants in October 2011. USAA claims it is the subrogee of the Ammermullers. USAA and Defendants disagree as to whether New Jersey's no-fault insurance law (the Ammermullers' residence) prohibits subrogation as to the insureds. USAA therefore filed its complaint against Defendants. At the status conference the Court questioned how the insurer could be entitled to payment from the Defendants, who already settled with and apparently paid USAA's insured. Questions were raised whether the Ammermullers were "made whole" or may have received a "double recovery." The question was also raised as to whether Defendants were on notice regarding USAA's subrogation rights, but ignored them "at their own peril" in settling with the Ammermullers.

Based on all of the above, the Court finds the settlement agreement between Defendants and the Ammermullers is relevant in this matter. In fact, Defendants do not object to the discovery on the basis of relevance, but only on the basis of confidentiality. The Court finds interesting Defendants' response to Interrogatory 3, which asked if, prior to their settlement with the Ammermullers, Defendants had "any discussions with them or their counsel in regards to USAA's claim of subrogation." Defendants object on the basis of confidentiality, but then respond:

> Notwithstanding such objection, the discussion prior to settlement centered around the fact that under New Jersey law, subrogation and reimbursement of PIP payments was statutorily prohibited. This was understood by all involved.

Having found the information requested is relevant, the Court proceeds to the question of whether it is discoverable. Rule 26(b)(1) of the Federal rules of Civil Procedure provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents of other tangible things and the identity and

> location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved int eh action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 99 S.Ct.1635, 60 L.Ed.2d 115 (1979); Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed.451 (1947). However, pursuant to Rule 26(c), a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, oppress or that causes undue burden or expense to the opposing party.

Whether to grant or deny a motion to compel is generally left within the District Court's broad discretion. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922 (4th Cir. 1995). The question before the Court is whether Defendants can be compelled to produce a copy of their "confidential agreement" with the Ammermullers, Cerabone, and Wood, related to Ammermuller, et al. v. Smith, et al., 1:10cv93, along with information surrounding the settlement agreement. Although the Court could not find Fourth Circuit law on point, two district courts within the Fourth Circuit have held that they can be so compelled. In Polston v. Eli Lilly and Company, 2010 WL 2926159 at *1 (D.S.C. July 23, 2010), the District of South Carolina stated:

> To be discoverable, the settlement agreement must be, at least, reasonably calculated to lead to the discovery of admissible evidence . . . .
>
> [A] variety of courts have recognized a "settlement privilege," . . . or required a "particularized showing that admissible evidence will be generated" prior to allowing the discovery of a confidential settlement agreement . . . many have not . . . . The Fourth Circuit has never recognized a settlement privilege or required a particularized showing in the context of a subpoena for confidential settlement documents. Nor can the court find any statute or rule excepting a confidential settlement agreement from Rule 26(b)(1). Accordingly, the only question before the court is whether any information in the agreement is relevant, and not unduly burdensome to produce.

Here, the Court has already found the information is relevant. Further, Defendants do not argue, and the Court does not find, that the materials are irrelevant or burdensome to produce.

In Oakridge Associates, LLC v. Auto-Owners Ins. Co., 2010 WL 3788058 (W.D.N.C.), the District Court for the Western District of North Carolina held that a confidential settlement agreement should be subject to discovery due to the possibility it contained information relevant to the case. The Court further found that "Plaintiff's legitimate interest in the confidentiality of the Settlement Agreement can be preserved by a protective order," noting:

> There is an important distinction between privilege and protection of documents, the former operating to shield the documents from production in the first instance, with the latter operating to preserve confidentiality when produced. An appropriate protective order can alleviate problems and concerns regarding both confidentiality and scope of the discovery material produced in a particular case . . . . Thus, discovery of the Settlement Agreement need not be prevented.

(Citing Virmani v. Novant Health Inc., 259 F.3d 284 (4th Cir. 2001).

The Court finds the two district court cases instructive. The Court **ORDERS** that "Plaintiff's Motion to Compel Discovery" [D.E.39] is **GRANTED**.

In fairness to USAA's insureds, who are not part of this motion, the Court directs Defendants to give notice to the Ammermullers, Cerabone, and Woods, within 7 days of entry of this order, that the confidential agreement and surrounding facts are to be produced to USAA. The Ammermullers, Cerabone, and Woods shall then have fourteen (14) days from said Notice to file with this Court any objections they may have to the production.

Failing any such objection timely filed, the Court **ORDERS** Defendants to respond in full to USAA's First Set of Discovery to Defendants within seven (7) days of the date any such objection was due.

Responses that require divulgence of confidential information, including the Settlement Agreement itself, may be subject to a protective order. In the absence of agreement on a protective order that limits disclosure to counsel, the parties, their insurers, and experts for this litigation only, the Court will entertain further proceedings limited to the form and substance of such a protective order.

Notwithstanding the now obvious futility of a meet and confer, the Court declines to award any costs and fees, based on the failure to certify the parties met and conferred and the failure to actually meet and confer prior to the filing of the motion.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: March 21, 2012.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

C

Only the Westlaw citation is currently available.

United States District Court,

D. South Carolina,
Columbia Division.
Kelly POLSTON, Plaintiff,
v.
ELI LILLY AND COMPANY, Defendant.
C/A No. 3:08-3639.

July 23, 2010.

Frederick J. Jekel, Motley Rice, Mt Pleasant, SC, Robert B. Ransom, Leventis and Ransom, Columbia, SC, for Plaintiff.

Ian S. Ford, Jane Thompson Davis, Nelson Mullins Riley and Scarborough, Charleston, SC, for Defendant.

**ORDER**

JOSEPH F. ANDERSON, JR., District Judge.

***1** This matter comes before the court on defendant Eli Lilly and Company's motion to compel (ECF No. 8) the South Carolina Medical Malpractice Joint Underwriting Association ("JUA") and Dr. Robert Borucki to comply with a May 6, 2010 subpoena seeking discovery of a confidential settlement agreement between them and plaintiff Kelly Polston. The agreement at issue arose out of the South Carolina state court case of *Kelly Polston v. Robert Borucki, MD et alia,* C/A No.2008-CP-40-2659. *Borucki* was a medical malpractice suit that settled confidentially in August 2009. The matter currently before the court arises from an action originally filed in this district, but now pending in the Zyprexia multidistrict litigation before Judge Jack Weinstein in the United States District Court of the Eastern District of New York. This matter is before this court because Lilly's subpoena issued from this district. Fed.R.Civ.P. 45(a)(2)(C). The parties have fully briefed the motion and the court heard argument at a July 20, 2010 hearing.

I. *Standard*

As with any discovery dispute, Rule 26(b)(1) provides the general rule:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party....

Fed.R.Civ.P. 26. Relevant information is a broader concept than admissible evidence. To be relevant, information need only be calculated to lead to the discovery of admissible evidence, it need not be admissible itself. "Relevant evidence" is defined to mean evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed.R.Evid. 401.

"On relevancy matters, the trial court has broad discretion." *Watson v. Lowcountry Red Cross,* 974 F.2d 482, 489 (4th Cir.1992). The court may restrict the discovery of otherwise allowable information if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C)(iii).

Broad discretion is afforded a district court's decision to grant or deny a motion to compel. *Erdmann v. Preferred Research Inc.,* 852 F.2d 788, 792 (4th Cir.1988).

II. *Discussion*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

The question before the court is whether Lilly may obtain disclosure of the terms of a confidential settlement agreement. To be discoverable, the settlement agreement must be, at least, reasonably calculated to lead to the discovery of admissible evidence. The court notes that a variety of courts have recognized a "settlement privilege," *see Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976 (6th Cir.2003) ("[W]e believe a settlement privilege serves a sufficiently important public interest, and therefore should be recognized."); Olin *Corp. v. Ins. Co. of N. Am.,* 603 F.Supp. 445, 449-50 (S.D.N.Y.1985) (same), or required a "particularized showing that admissible evidence will be generated" prior to allowing the discovery of a confidential settlement agreement, *see Bottaro v. Hatton Assoc.,* 96 F.R.D. 158 (E.D.N.Y.1982). Many have not. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Mediateck, Inc.,* No. C-05-3148 MMC (JCS), 2007 WL 963975, at *4 (C.D.Cal. Mar.30, 2007); *In re Subpoena Issued to Commodity Futures Trading Comm'n, 370 F.Supp.2d 201 (D.D.C.2005); Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc.,* 831 F.Supp. 1516, 1531 (D.Colo.1993). The Fourth Circuit has never recognized a settlement privilege or required a particularized showing in the context of a subpoena for confidential settlement documents. Nor can the court find any statute or rule excepting a confidential settlement agreement from Rule 26(b)(1). Accordingly, the only question before the court is whether any information in the *Borucki* agreement is relevant, and not unduly burdensome to produce. To that end, Lilly seeks access to the *Borucki* agreement so that it may (1) value any set-off it may be entitled to pursuant to section 15-38-50 of the South Carolina Code, and (2) assess the potential effect of the agreement on Dr. Borucki's testimony in the present action.

A. S.C.Code Ann. § 15-38-50

***2** Lilly seeks access to the *Borucki* agreement so that it may value the amount of any set-off it may be entitled to pursuant to S.C.Code Ann. § 15-38-50. Section 15-38-50 provides:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
>
> (1) it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
>
> (2) it discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

S.C.Code Ann. § 15-38-50. South Carolina courts have found that the "same injury" or

"same wrongful death" terms should be construed to encompass the same the injury rather than the same claim. By way of example, damages for wrongful death and survival may differ in amount, but "[i]njury, as used in the statute, is broad enough to include all damages, including those attributable to both survival and wrongful death causes of action which result from the joint negligence of the various responsible parties." *Ellis v. Oliver,* 335 S.C. 106, 515 S.E.2d 268, 272 (S.C.App.1999). "Section 15-38-50 grants the court no discretion in determining the equities involved in applying a set-off once a release has been executed in good faith between a plaintiff and one of several joint tortfeasors." *Id.* Accordingly, Lilly argues that section 15-38-50 should apply automatically, by operation of law, as a credit toward Polston's claim. The court agrees that section should apply automatically as a credit, but only against a judgment. *Id.* at 271. Accordingly, there is no reason, for the purposes of the section, to order the disclosure of the amount of the credit until a verdict finding liability on the part of Lilly has been reached. *See Bottaro v. Hattton Assoc.,* 96 F.R.D. 158 (E.D.N.Y.1982) ("Even then, the settlement would not be evidence relevant to any issue in this case other than the ministerial apportionment of damages, a mathematical computation which the Court rather than the jury will perform. Hence, the amount of the settlement is not relevant to any issue in this case at this time.").

B. Witness Bias

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Lilly contends that because Dr. Borucki and Dr. Alana Williams are likely to be called as witnesses in the present case, disclosure of the terms of the *Borucki* agreement are necessary in order to assess their potential biases and prejudices. Lilly argues that disclosure of the amount of the settlement is necessary to assess whether the termination of prior litigation fairly valued the plaintiff's claim, or whether it left money on the table with a view to making up the difference against Lilly. In Lilly's view, disclosure of the amount of the settlement would allow it to assess whether the settlement terms incentivize favorable testimony. The court finds that it is unsuited to making such a determination and that Lilly is likely entitled to use the settlement agreement for impeachment at trial. *See* Fed.R.Evid. 408. However, as no trial looms, the court will deny Lilly's motion to compel without prejudice, and revisit the issue closer to trial.

III. *Conclusion*

***3** Based on the foregoing, the court denies Lilly's motion to compel without prejudice. The court notes that the full terms of the agreement are likely admissible at trial as impeachment evidence pursuant to Rule 408, and, upon appropriate motion, the court will examine the issue again closer to trial.

IT IS SO ORDERED.

D.S.C.,2010.

Polston v. Eli Lilly and Co.
Slip Copy, 2010 WL 2926159 (D.S.C.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

H

Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court, W.D. North Carolina,

Charlotte Division.
OAKRIDGE ASSOCIATES, LLC, Plaintiff,
v.
AUTO-OWNERS INSURANCE COMPANY, Defendant.
Civil Action No. 3:10-CV-145-DCK.

Sept. 23, 2010.

William C. Robinson, Robinson, Elliott & Smith, Charlotte, NC, for Plaintiff.

Walter E. Brock, Jr., Young, Moore & Henderson, P.A., Raleigh, NC, for Defendant.

***ORDER***

DAVID C. KEESLER, United States Magistrate Judge.

***1 THIS MATTER IS BEFORE THE COURT** on “Defendant's Motion To Compel” (Document No. 7). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is ripe for disposition. Having carefully considered the record, the motion, and applicable authority, the undersigned will *grant* the motion to compel.

**BACKGROUND**

Plaintiff Oakridge Associates, LLC (“Plaintiff” or “Oakridge”) filed a “Complaint” (Document No. 1-3) in the Superior Court of Mecklenburg County on June 12, 2009. Plaintiff's Complaint states claims for breach of contract, unfair and deceptive trade practices, and bad faith breach of insurance contract, against Defendant Auto-Owners Insurance Company (“Defendant”). (Document No. 1-3). On or about May 31, 2006, Jewell Gibson filed a lawsuit against Oakridge in Rowan County, North Carolina, alleging defects in a certain premises, and that Oakridge was liable to her for damages. *Id.* Oakridge contends that it had an insurance policy with Defendant, but that Defendant breached that policy when it improperly refused to indemnify or defend Oakridge against Ms. Gibson's lawsuit. *Id.*

On March 26, 2010, Defendant filed a “Notice Of Removal” (Document No. 1) bringing the action between Oakridge and Auto-Owners Insurance Company to this Court. “Defendant's Motion To Compel” was filed on August 31, 2010 and is now ripe for review.

**STANDARD OF REVIEW**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. *See Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979); *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, oppress or, that causes undue burden or expense to the opposing party. *See* Fed.R.Civ.P. 26(c).

Whether to grant or deny a motion to compel is generally left within the District Court's broad discretion.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*See,* *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 929 (4th Cir.1995) (denial of motions to compel reviewed on appeal for abuse of discretion); *Erdmann v. Preferred Research Inc.,* 852 F.2d 788, 792 (4th Cir.1988) (noting District Court's substantial discretion in resolving motions to compel); and *LaRouche v. National Broadcasting Co.,* 780 F.2d 1134, 1139 (4th Cir.1986) (same).

**DISCUSSION**

***2** The question before the Court is whether Plaintiff Oakridge can be compelled to produce a copy of its confidential "Settlement Agreement" with Jewell Gibson, related to *Jewell Gibson v. Oakridge Associates, LLC and Jay Snover,* 06 CVD 1575, Rowan District Court. Defendant acknowledges in its "Reply To Plaintiff's Memorandum In Opposition To Defendant's Motion To Compel" (Document No. 12) that Plaintiff has produced other requested documents and that the Settlement Agreement is "[t]he only known document that remains to be produced by counsel for Oakridge."

Plaintiff Oakridge, in its "... Memorandum In Opposition To The Defendant's Motion To Compel" (Document No. 9) expresses only a limited objection to producing the Settlement Agreement. Specifically, Plaintiff contends that it is unable to make the document available because the Settlement Agreement is "confidential" and although Oakridge is willing to void the confidentiality provision, it "does not have standing to waive Jewel Gibson's right to confidentiality." (Document No. 9, p. 2). Plaintiff states that it has been unsuccessful in making contact with Ms. Gibson or her Legal Aid attorney to get permission to produce the document. *Id.*

Neither party has offered any legal argument or citation to authority on the issue of whether or not a confidential settlement agreement can be produced under these circumstances. The Court's own research indicates that production of the Settlement Agreement is allowable. "To be discoverable, the settlement agreement must be, at least, reasonably calculated to lead to the discovery of admissible evidence." *Polston v. Eli Lilly And Company,* 2010 WL 2926159 at *1 (D.S.C. July 23, 2010). *Polston* further notes that

> a variety of courts have recognized a "settlement privilege," ... or required a "particularized showing that admissible evidence will be generated" prior to allowing the discovery of a confidential settlement agreement ... Many have not.... The Fourth Circuit has never recognized a settlement privilege or required a particularized showing in the context of a subpoena for confidential settlement documents. Nor can the court find any statute or rule excepting a confidential settlement agreement from Rule 26(b)(1). Accordingly, the only question before the court is whether any information in the [Gibson] agreement is relevant, and not unduly burdensome to produce.
>
> *Id.* (internal citations omitted).

Plaintiff has not argued that production of the Settlement Agreement would in any way be "unduly burdensome." The record suggests that Plaintiff has the document, and is thus far only unwilling to produce it for fear of violating a confidentiality provision. Plaintiff's counsel considers the "relevancy debatable," but would like to make the document available, and has presented no objection based on relevancy or burden. (Document No. 9, p. 2). Referring to the Settlement Agreement, Plaintiff's counsel stated in an August 27, 2010, email "... if you secure the legal services office's permission (and their client's), I will gladly produce it as it helps my case." (Document No. 8-7, p. 2). Defendant's argument as to the relevancy of the document it seeks has been at best limited, but sufficiently persuasive, nonetheless-"[t]he settlement agreement is central to both whether there is insurance coverage and how much, since Plaintiff's suit seeks to recover the amounts paid by Plaintiff in settling the underlying suit." (Document No. 8, p. 3).

***3** "Discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action." *Marker v. Union Fid. Life Ins. Co. .,* 125 F.R.D. 121, 124 (M.D.N.C.1989). Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

probable than it would be without the evidence." Federal Rule of Evidence 402 states: "[a]ll relevant evidence is admissible...."

In this case, the undersigned finds that the disputed Settlement Agreement should be subject to discovery due to the possibility it contains information relevant to this case. Guided by Fourth Circuit precedent, the Court finds that Plaintiff's legitimate interest in the confidentiality of the Settlement Agreement can be preserved by a protective order.

> There is an important distinction between privilege and protection of documents, the former operating to shield the documents from production in the first instance, with the latter operating to preserve confidentiality when produced. An appropriate protective order can alleviate problems and concerns regarding both confidentiality and scope of the discovery material produced in a particular case.

*Virmani v. Novant Health Inc.,* 259 F.3d 284, 288 n. 4 (4th Cir .2001); *see also, Cadmus Communications Corp. v. Goldman,* 3:05cv257, 2006 WL 3359491 (W.D.N.C. Nov.17, 2006). Thus, discovery of the Settlement Agreement need not be prevented.

**CONCLUSION**

**IT IS, THEREFORE, ORDERED** that "Defendant's Motion To Compel" (Document No. 7) is **GRANTED.** Defendant's request for costs and fees associated with the motion is **DENIED.**

**IT IS FURTHER ORDERED** that production of the Settlement Agreement shall be subject to a protective order. The parties, jointly if possible, shall submit a proposed protective order on or before **October 8, 2010.** Within five (5) days of the Court filing a protective order, the Plaintiff shall produce the Settlement Agreement, subject to the terms of the Court's protective order.

W.D.N.C.,2010.

Oakridge Associates, LLC v. Auto-Owners Ins. Co.
Slip Copy, 2010 WL 3788058 (W.D.N.C.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.