## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

USAA CASUALTY INSURANCE COMPANY,
as subrogree of Arthur Ammermuller,
Suzanne Cerabone, Jeanne Ammermuller,
Erica Ammermuller, Allison Ammermuller,
and Christopher Woood,

        Plaintiff,

v.                   //   CIVIL ACTION NO. 1:10CV115
                                      (Judge Keeley)

PAUL GARRETT SMITH, d/b/a P.H. One
Trucking, P.H. ONE TRUCKING, DAVID S.
GILB, JOHN DOE MECHANIC, and JOHN
DOE BRAKE REPAIR SHOP, INC.,

        Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
### RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
### <u>DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]</u>

Pending before the Court are the parties' competing motions for summary judgment. (Dkt. Nos. 71, 74). The plaintiff, USAA Casualty Company ("USAA"), seeks a declaration that it has a legal right of subrogation against the defendants, Paul Garrett Smith ("Smith"), P.H. One Trucking ("P.H. Trucking"), David S. Gilb ("Gilb"), and Northland Insurance Company ("Northland") (collectively, the "defendants") for personal injury protection ("PIP"), wage loss, and property damage payments it made to its insureds. (Dkt. No. 71 at 1). Conversely, the defendants seek a declaration that USAA does not have a legal right to reimbursement for PIP payments made to its insureds. (Dkt. No. 74). For the

USAA v. SMITH et al                                    1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

reasons that follow, the Court **GRANTS** USAA's motion (dkt. no. 71) and **DENIES** the motion of the defendants (dkt. no. 74).

## I.

This case arises from a vehicle collision that occurred in West Virginia, which injured New Jersey residents insured under motor vehicle liability policies that had been issued by USAA in New Jersey. At bottom, the case presents two questions. First, does the law of West Virginia or New Jersey apply to the subrogation dispute arising from the various insurance payments made in the wake of the collision? Second, if New Jersey law does apply, does N.J.S.A. § 39:6A-9.1 preclude subrogation of the carrier, USAA, to its insureds?

The facts giving rise to this dispute are not contested. <u>See</u> (Dkt. No. 72 at 1). On July 30, 2008, a tractor trailer operated by Gilb and owned by Smith drove into the rear of a 2003 BMW 325 on Interstate 68, near Morgantown, West Virginia. The BMW contained five occupants: Arthur Ammermuller ("Ammermuller"), driver; Suzanne Cerabone ("Cerabone"), owner of the vehicle and Ammermuller's wife; Erica and Allison Ammermuller, their daughters; and Christopher Wood (collectively, the "insureds"). (Dkt. No. 66 at 4). The collision injured the occupants and damaged the BMW. A USAA motor

USAA v. SMITH et al                                        1:10CV115

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]

vehicle liability insurance policy, number 4436891, issued to Cerabone, covered the BMW (the "Cerabone policy"). <u>Id.</u> Erica and Allison Ammermuller were covered by a different USAA policy that was issued to Jeanne Ammermuller, number 4436891 ("the Ammermuller policy"). (Dkt. No. 72 at 2). Both USAA policies contained a standard clause subrogating USAA to the interests of its insureds. (Dkt. Nos. 72-1 at 55; 72-3 at 50).[1] All occupants of the BMW were residents of New Jersey, and, as already noted, USAA had issued both insurance policies in that state, as well.

Following the collision, Ammermuller, Cerabone, and Wood submitted claims to USAA for payment under the Cerabone policy. Likewise, Eric and Allison Ammermuller submitted claims for payment under the Ammermuller policy. USAA adjusted the claims and has, to date, made the following payments to its insureds stemming from the July 2008 collision: to Ammermuller, $47,788.03 in PIP payments; to

---

[1]     The clause states:

If we make a payment under this policy and the person or for whom payment was made has a right to recover damages from anther, we will be subrogated to that right. That person shall do whatever is necessary to enable us to exercise our rights, and shall do nothing after loss to prejudice them. However, our rights in this paragraph do not apply under Part D, against any person using your covered auto with a reasonable belief that that person is entitled to do so.

(Dkt. No. 72 at 2).

USAA v. SMITH et al                                    1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

Ammermuller and Cerabone, $17,113.46 in vehicle payments; to Ammermuller, $42,054.00 in personal property payments; to Erica Ammermuller, $66,055.21 in PIP payments; and to Allison Ammermuller, $3,781.48 in PIP payments. (Dkt. No. 72 at 3). USAA thus has paid $117,320.72 in PIP payments, and $136,792.18 in total payments.[2] Id.

In May, 2010, the insureds sued Gilb, Smith, P.H. Trucking and other defendants for personal injuries sustained in the July 2008 collision. See Complaint, Ammermuller et al v. Smith et al, No. 1:10CV93 (N.D.W. Va. June 21, 2010), ECF No. 7-2. On November 23, 2011, Northland, a Connecticut firm and the carrier for Gilb, Smith, and P.H. Trucking, settled the insureds' claims for $600,000. See (dkt. no. 72-8). That settlement resulted in a written agreement (the "2011 settlement agreement") stating, in pertinent part:

> It is also understood and agreed that RELEASORS'[3] insurer, USAA, has filed suit against the RELEASEES in a subrogation action to collect the personal property and PIP payments that it paid under its policy of insurance

---

[2]    The parties do not appear to contest USAA's right to subrogation of the property and vehicle damage payments, only the PIP payments. See (Dkt. No. 72-7).

[3]    The settlement agreement defined the Ammermullers, Cerabone, and Wood as "RELEASORS" and Gilb, Smith, P.H. One Trucking, and Northland as "RELEASEES." (Dkt. No. 72-8 at 1).

USAA v. SMITH et al                                    1:10CV115

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]

> with RELEASORS. It is understood and agreed that there is no indemnification by RELEASORS to RELEASEES for that suit or claim. It is further understood and agreed that RELEASEES shall be solely liable for and shall satisfy any and all valid claims on PIP and other first party benefits asserted by USAA.

(Dkt. No. 72-8 at 6). Subsequently, on November 30, 2011, the Court dismissed the plaintiffs' negligence claims with prejudice. See Order, Ammermuller et al v. Smith et al, No. 1:10CV93 (N.D.W. Va. Nov. 30, 2011), ECF No. 205.

USAA filed this suit for subrogation on July 28, 2010. Following the settlement in the underlying negligence case at the end of 2011, it joined Northland as a defendant in order to pursue its subrogation claims directly against it. See (Dkt. No. 57).[4] On February 25, 2013, USAA moved for summary judgment, seeking a declaration that, as a matter of law, it is entitled to

---

[4]    As USAA explained in its Motion for Leave to Join Additional Party and Amend the Complaint,

> Given the clear language of the release, not only are the current Defendants liable for "any and all valid claims on PIP and other first party benefits asserted by USAA," Northland is as well. This is the because the term "Releasees" . . . is defined as "[Gilb, Smith, P.H. Trucking] and Northland Insurance . . ." Accordingly, to the extent this Court finds that USAA has a valid claim, the release contractually obligates Northlands Insurance, [as well as Gilb, Smith, and P.H. Trucking], to pay it.

(Dkt. No. 52 at 2). No objection was lodged to USAA's motion to amend the complaint and join Northlands, so, for good cause shown, the Court granted its motion. (Dkt. No. 57).

USAA v. SMITH et al                                    1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

reimbursement of PIP payments from Northlands. (Dkt. No. 71). Northlands also filed a motion for summary judgment on March 8, 2013. (Dkt. No. 74).

USAA contends that, as its insureds' subrogee, it has a valid contractual and equitable right to recover PIP payments, wage loss, and property damage payments stemming from the July 2008 collision from Northlands and its insureds. Conversely, Northlands contends that a particular provision of New Jersey's no-fault law, N.J.S.A. § 39:6A-9.1, precludes USAA's recovery of those payments. The cross motions for summary judgment are fully briefed, and the matter is ripe for review.

## II.

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir.

6

USAA v. SMITH et al                                          1:10CV115

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]

2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248-52. Where, as is the case here, both parties have moved for summary judgment, "the court must consider each party's motion individually to determine if that party has satisfied the summary judgment standard." Lucas v. Curran, 856 F. Supp. 260, 264 (D. Md. 1994) (citing 10A Charles A. Wright et al., Federal Practice and Procedure, § 2720 (1983)).

USAA v. SMITH et al                                    1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

**III.**

While the Court must consider each party's motion for summary judgment on its own merits, both motions present common questions of law, the first of which is whether the law of West Virginia or New Jersey should apply to USAA's claim for subrogation. The Court will begin its analysis there.

**A.**

Pursuant to Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), the applicable law in a diversity case such as this is determined by the substantive law of the state in which a district court sits.[5] This includes the forum state's prevailing choice of law rules. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-97 (1941). USAA argues that, because its subrogation claim stems from an automobile collision that occurred in West Virginia, West Virginia's choice of law rule for tort, lex loci delicti, requires that the substantive law of West Virginia should control this case. Syl. pt. 1, Paul v. Nat'l Life, 352 S.E.2d 550 (W. Va. 1986). Northlands contends that the substantive law of New Jersey – the state in which USAA issued the Cerabone and Ammermuller

---

[5]      It is undisputed that the parties are diverse and more than $75,000 is in controversy. Thus, the Court has subject matter jurisdiction over this matter. See 28 U.S.C. § 1332.

USAA v. SMITH et al                                          1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

policies, and the state in which USAA's insureds reside – should control. See Johnson v. Neal, 418 S.E.2d 349, 351-52 (W. Va. 1992) (citing Paul v. Nat'l Life Ins. Co., 352 S.E.2d 550 (W. Va. 1986)).

For the reasons that follow, the Court concludes that the substantive law of New Jersey controls this action. USAA seeks to enforce a putative right to subrogation arguably created by the subrogation clauses in the Cerabone and Ammermuller policies. See (Dkt. No. 72 at 9) (USAA is "contractually subrogated under the relevant insurance policies").  The Supreme Court of Appeals of West Virginia has made plain that "[t]he law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this state." Syl. pt. 3, Howe v. Howe, 625 S.E.2d 716, 717 (W. Va. 2005). Furthermore, "[t]he provisions of a motor vehicle policy will ordinarily be construed according to the laws of the state where the policy was issued and the risk insured was principally located, unless another state has a more significant relationship to the transaction and the parties." Syl. pt. 2, Lee v. Saliga, 373 S.E.2d 345 (1988).

Here, USAA issued the Cerabone and Ammermuller polices in New Jersey to New Jersey residents. Importantly, USAA has not argued that West Virginia has a more significant relationship to this

9

USAA v. SMITH et al                                    1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

matter than New Jersey. Thus, as the policies were issued in New

Jersey and the risks to be insured, i.e., the motor vehicles, were

principally located in New Jersey, New Jersey law will control the

construction of the policies upon which USAA basis its claim for

subrogation. See also Johnson v. Neal, 418 S.E.2d 349, 351–52 (W.

Va. 1992) (where insurance policy was issued in Virginia by a

Virginia company to a Virginia resident, and West Virginia's

relationship to the transaction based on the location of the

accident was minor, Virginia law controlled).[6]

                                   **B.**

     The next question of law equally joined in the parties' cross

motions for summary judgment is the effect of N.J.S.A. § 39:6A-9.1

("Recovery of personal injury protection benefits from

tortfeasor"). Northlands argues that the statute precludes USAA's

---

        [6]    Moreover, application of New Jersey law on the narrow facts of
this case does not offend the public policy of West Virginia. See Lee,
373 S.E.2d at 353 ("We also recognize the conflict of laws principle that
a state may ignore the law of another state if it is contrary to its own
public policy."). While West Virginia has not passed "no fault"
legislation as has New Jersey, on these facts, N.J.S.A. § 39:6A-9.1 does
not lead to a result other than that which would occur under West
Virginia law. As such, USAA's right to subrogation for PIP payments is
determined by the terms of its contract with its insureds, and a
"provision in an insurance policy providing for the subrogation of the
insurer to the rights of the insured to the extent that medical payments
are advanced to such insured by the insurer . . . is not invalid as
against the public policy of this State. Syl. pt., The Travelers
Indemnity Co. v. Rader, 166 S.E.2d 157 (W. Va. 1969).

USAA v. SMITH et al                                      1:10CV115

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]

subrogation claim for a number of reasons. Fundamentally, Northlands contends that § 39:6A-9.1 creates a right to repayment for PIP payments by carriers such as USAA – as opposed to a right of subrogation – only when the underlying accident occurs in New Jersey. It also argues that, had the July 2008 collision occurred in New Jersey rather than in West Virginia, USAA could not recover the PIP payments made to its insureds from Northlands because it did not seek arbitration as § 39:6A-9.1 requires. On the other hand, USAA argues that, by its plain language, § 39:6A-9.1 does not apply because the July 2008 accident did not occur in New Jersey; consequently, the statute does not bar its otherwise uncontested contractual claim for subrogation against Northlands.

1.

Although it is lengthy, it is instructive to reproduce the entire text of § 39:6A-9.1(a). Adopted by the New Jersey Legislature in 1983,[7] it provides in relevant part:

---

[7] Section 39:6A-9.1 has been amended several times since its adoption in 1983. See 1998 N.J. Sess. Law Serv. Ch. 21 (West); 1990 N.J. Sess. Law Serv. 8 (West). As adopted in 1983, however, § 39:6A-9.1 contains the provisions that lie at the heart of the defendants' motion for summary judgment: "right to recover" and "as a result of an accident occurring within this State." As such, 1983 is the pertinent, watershed date against which to compare decisions addressing PIP subrogation under New Jersey's No-Fault Law.

11

USAA v. SMITH et al                                    1:10CV115

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]

> An insurer . . . paying . . . personal injury protection benefits . . . as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection or medical expense benefits coverage, other than for pedestrians, under the laws of this State, including personal injury protection coverage required to be provided in accordance with section 18 of P.L.1985, c. 520 (C.17:28-1.4), or although required did not maintain personal injury protection or medical expense benefits coverage at the time of the accident.

Section 39:6A-9.1(a) is a component of New Jersey's 1972 Automobile Reparation Reform Act, N.J.S.A. §39:6A-1 - 35 (the "No-Fault Law"), which was aimed at "'compensating a larger class of citizens than the traditional tort-based system and doing so with greater efficiency and at a lower cost.'" Roig v. Kelsey, 641 A.2d 248, 249 (N.J. 1994) (quoting Oswin v. Shaw, 609 A.2d 415, 417 (N.J. 1992)). Under New Jersey's No-Fault Law,

> every automobile liability-insurance policy issued in New Jersey had to provide PIP coverage, including medical-expense benefits, "without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an automobile accident." N.J.S.A. § 39:6A-4. A person's no-fault insurance was to be an injured person's exclusive remedy for medical-expense claims arising out of an automobile accident.

Id. at 250.

USAA v. SMITH et al                                          1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

As originally enacted, New Jersey's No-Fault Law contained a provision, § 39:6A-9, the predecessor to today's § 39:6A-9.1, that subrogated an insurer paying PIP benefits to the rights of its insured. See N.J.S.A. § 39:6A-9 (1972); State Farm Mut. Auto. Ins. Co. v. Licensed Beverage Ins. Exch., 679 A.2d 620, 623 n.1 (N.J. 1996). Section 39:6A-9 stated:

> Any insurer paying benefits in accordance with the provisions of section 4 and section 10, [PIP] coverage, regardless of fault, shall be subrogated to the rights of any party to whom it makes such payments, to the extent of such payments. Such subrogated insurer may only by intercompany arbitration or by intercompany agreement exercise its subrogation rights against only the insurer of any person liable for such damages in tort provided, however, that such insurer may exercise its subrogation rights directly against any person required to have in effect the coverage required by this act and who failed to have such coverage in effect at the time of the accident. The exemption from tort liability provided in section 8 does not apply to the insurers' subrogation rights. On and after 2 years from the effective date of this act the provisions of this section shall be inoperative.

Licensed Beverage Ins. Exch., 679 A.2d at 623 n.1.

By its own terms, § 39:6A-9 expired in 1974. In 1983, New Jersey's legislature enacted N.J.S.A. § 39:6A-9.1, which made two notable changes to § 39:6A-9. First, § 39:6A-9.1 removed all reference to "subrogation" or "subrogee" and substituted the concept of a "right to reimbursement" that was "not linked to any purported subrogation right." Licensed Beverage Ins. Exch., 679

13

USAA v. SMITH et al                                    1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

A.2d at 624. In other words, § 39:6A-9.1 "confers a primary right
of reimbursement on the injured party's insurer and does not make
recovery depend upon a claim the insurer acquires by subrogation to
the right of its insured." Buoni v. Browning Ferres Indus., 529
A.2d 1044, 1046 (N.J. Ch. 1987). Second, § 39:6A-9.1 added the
phrase "as a result of an accident occurring within this State," a
phrase that remains a prominent part of the current statute. It is
upon that phrase that USAA's claim turns.

**2.**

A line of New Jersey cases has interpreted N.J.S.A. §§ 39:6A-9
and 39-6A-9.1. Surprisingly, however, since the passage of § 39-6A-
9.1 in 1983, no New Jersey court has addressed facts analogous to
those presented here. Thus, despite the defendants' arguments to
the contrary, a review of early cases, specifically Cirelli v. Ohio
Casualty Ins. Co., 371 A.2d 17 (N.J. 1977), is warranted, and,
indeed, quite helpful.

In Cirelli v. Ohio Casualty Ins. Co., 371 A.2d 17 (N.J. 1977),
the Supreme Court of New Jersey held that, in the case of an
automobile accident occurring outside of New Jersey, § 39-6A-9 did
not invalidate the subrogation clause of a New Jersey motor vehicle
liability policy that otherwise complied with the state's No-Fault

14

USAA v. SMITH et al                                      1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

Law. Id. at 21. The court reasoned that New Jersey's legislature passed § 39-6A-9 in response to the "expressed reluctance" of "[s]pokesmen for the insurance industry" as to subrogation's "economic benefit." Id. at 20-21.

New Jersey's highest court noted that, in addition to limiting a carrier's right to subrogation for PIP benefits, the state legislature had also recognized "that the injured person who was the beneficiary of the PIP payments could not and should not recover from the tortfeasor the medical, hospital and other losses for which he had already been reimbursed," i.e., for which he had already received PIP benefits. Id. at 21 (citing N.J.S.A. § 39:6A-12); see Adams v. Cooper Hosp., 684 A.2d 506, 509 (N.J. App. Div. 1996) (§ 39:6A-12 "is designed to prevent double recovery by a plaintiff eligible for PIP benefits").

Where the accident necessitating PIP payments occurs outside of New Jersey, however, the court reasoned that disallowing subrogation would not serve those policy goals. See id.

> If insurers of New Jersey vehicles are deprived of subrogation rights, liability carriers in foreign jurisdictions may reap an unjustifiable benefit. In other words the New Jersey insurance company could not collect from the New York tortfeasor or his insurance carrier. . . . Furthermore, the injured person might be able to maintain an action in the foreign jurisdiction for recovery of the Same expenses and losses for which he had been paid under PIP. Double recovery is, of course,

15

USAA v. SMITH et al                                      1:10CV115

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]

contrary to the policy enunciated in the New Jersey No
Fault Law.

Id.

Ultimately, the court concluded that the effect of § 39-6A-9
was limited to accidents that occur within the state of New Jersey,
and, consequently, because the accident under review had occurred
in New York, "the insurance company's subrogation rights against
the out of state vehicle are valid." Id. See also Aetna Ins. Co. V.
Gilchrist Bros., Inc., 428 A.2d 1254, 1261-62 (N.J. 1981) (the No-
Fault Law's exclusion of subrogation of PIP benefits was not
relevant in Cirelli "because it was a New York accident involving
a New York automobile and Cirelli contemplated New York
litigation"). In the thirty-six years following Cirelli, no court
has explicitly overruled it, nor has the New Jersey Legislature
passed any statute purporting to do so. See Lattimer v. Boucher,
458 A.2d 528, 532 (N.J. Ch. Div. 1983) (the Cirelli "court made it
clear that its reasoning applied to post-1974 accidents as well").
Cf. Unsatisfied Claim & Judgment Fund Bd. v. New Jersey Mfrs. Ins.
Co., 649 A.2d 1243, 1251 (N.J. 1994) ("As a direct response to
Aetna, the Legislature enacted N.J.S.A. § 39:6-9.1.").

Following the adoption of § 39:6A-9.1, which removed all
references to subrogation and added the phrase "as a result of an

16

USAA v. SMITH et al                                    1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

accident occurring within this State," numerous courts in New Jersey have addressed a carrier's right to subrogation for PIP benefits paid due to an accident occurring in New Jersey. See State Farm Mut. Auto. Ins. Co. v. Licensed Beverage Ins. Exch., 679 A.2d 620, 621 (N.J. 1996); Unsatisfied Claim & Judgment Fund Bd., 649 A.2d at 1244; Buoni, 529 A.2d at 1044. But see IFA Ins. Co. v. Waitt, 637 A.2d 941) (N.J. 1994) (not specifying the location of the accident giving rise to the subrogation dispute).

None, however, has addressed a carrier's right to subrogation for PIP benefits paid due to an accident occurring outside of New Jersey. Indeed, a 1990 decision by an intermediate Florida court is the only case cited by the parties that addresses the applicability of § 39:6A-9.1 where an accident did not occur in New Jersey but did involve the owner of a New Jersey automobile insurance policy. Giancola v. Thrifty Rent-A-Car Sys., Inc., 569 So. 2d 849, 850 (Fla. Dist. Ct. App. 1990). There, the New Jersey carrier sued the tortfeasor's carrier for subrogation through its insured, seeking to recover PIP benefits. Id. While ultimately decided under Florida law, the court's reasoning proceeded from the basic premise that "New Jersey law recognizes the contractual right of an insurer who has paid PIP benefits to recover through subrogation where an accident occurs outside the State of New Jersey with a vehicle

17

USAA v. SMITH et al                                        1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

registered in another jurisdiction." Id. (citing Cirelli, 371 A.2d at 17).

### 3.

Here, the Court concludes that § 39:6A-9.1 does not invalidate USAA's contractual claim for subrogation of PIP benefits. By its plain terms, that statute only applies to insurers paying PIP benefits "as a result of an accident occurring within this State," that is, New Jersey. Id. § 39:6A-9.1. The parties do not dispute that the July 2008 accident in issue occurred in West Virginia. See (Dkt. No. 58 at 5). Thus, USAA has paid $117,320.72 in PIP benefits to its insureds as a result of an accident occurring within West Virginia, not New Jersey. Consequently, § 39:6A-9.1 is simply inapplicable to USAA's claim.

The defendants reason that, because New Jersey courts have held that § 39:6A-9.1 "confers a primary right of reimbursement on the injured party's insurer and does not make recovery [of PIP benefits] depend upon a claim the insurer acquires by subrogation to the right of its insured," Buoni, 529 A.2d at 1046, any attempt to recover PIP benefits by way of contractual subrogation – no matter where the underlying accident occurred – must necessarily fail. That reasoning, however, runs contrary to the plain language

18

USAA v. SMITH et al                                    1:10CV115

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]

of the statute, the reach of which is limited to recovery of PIP benefits paid as a result of an accident occurring in New Jersey. See In re Plan for Abolition of Council on Affordable Hous., - A.2d -, 2013 WL 3717751 (N.J. July 10, 2013) ("If the language of a statute is clear, a court's task is complete. . . . Thus, the literal words of a statute, if clear, mark the starting and ending point of the analysis.").

Furthermore, Cirelli has never been expressly overruled; thus its holding remains good law. In fact, at least one New Jersey court has observed that the Cirelli court "made it clear that its reasoning applied to post-1974 accidents as well," that is, accidents occurring after the expiration of § 39:6A-9. Lattimer, 458 A.2d at 532; see also Melick v. Stanley, 416 A.2d 415, 418 (N.J. Ch. Div. 1980) ("In dictum the [Cirelli] court also noted that the statutory bar against subrogation would not apply to out-of-state accidents with foreign vehicles which occurred after January 1, 1975."). When the application of Cirelli in 1996 by the Florida court, see Giancola, 569 So. 2d at 850, is viewed in combination with the absence of any contrary New Jersey authority, the Court concludes that Cirelli still applies where the accident giving rise to the subrogation claim did not occur in New Jersey.

USAA v. SMITH et al                                    1:10CV115

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]

Moreover, the policy concerns expressed in Cirelli apply to the facts of this case. First, double recovery is a concern here, as it was in Cirelli. At this point, USAA's insureds have received both $117,320.72 in PIP benefits and a $600,000 settlement from the defendants in the companion negligence case. See 2011 settlement agreement (Dkt. No. 72-8). As was forecast in Cirelli, if the Court were to apply the rule promoted by the defendants, USAA's insureds "might be able to maintain an action in the foreign jurisdiction for recovery of the same expenses and losses for which he had been paid under PIP." Cirelli, 371 A.2d at 21.

Second, since Northlands is a Connecticut-based insurer, any efficiencies that may be achieved by arbitration, rather than litigation to enforce contractual subrogation obligations, are minor. See id. Indeed, were this Court to adopt the defendants' reading of § 39:6A9.1, it would achieve the opposite result: non-New Jersey liability carriers would "reap an unjustifiable benefit" that would, in effect, force New Jersey residents to "subsidize residents of other jurisdictions." Id.

At bottom, by its plain terms, § 39:6A-9.1 does not bar USAA's contractual claim for subrogation of PIP benefits arising from an accident that occurred in West Virginia. For the same reasons, the Court finds the defendants' arguments under N.J.S.A. § 39:6A-

20

USAA v. SMITH et al                                          1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

9.1(b), regarding the claims of Derek Asklar, are unpersuasive.

(Dkt. Nos. 76 at 15-18; 75 at 11-15). Consequently, the Court

**DENIES** the defendants' motion for summary judgment. (Dkt. No. 74).


**IV.**

That one party is not entitled to summary judgment does not

necessarily mean another is. See Lucas, 856 F.Supp. at 264. Here,

however, USAA has established that there is no material dispute of

fact as to its valid claim for subrogation, and that it is entitled

to judgment as a matter of law.

First, the subrogation clauses of the Ammermuller and Cerabone

policies establish that USAA is, indeed, the subrogee of its

insureds. See (Dkt. Nos. 72-1 at 55; 72-3 at 50); Cirelli, 371 A.2d

at 21. Second, USAA paid PIP benefits to its insureds, plus

payments for lost personal property and damage to the BMW 325. See

(Dkt. No. 72-4). Third, subsequent to USAA's payments, its insureds

entered into the 2011 settlement agreement, under which the

defendants paid them $600,000 in exchange for a dismissal with

prejudice of all their claims. (Dkt. No. 72-8 at 3). Finally, the

21

USAA v. SMITH et al                                    1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

2011 settlement agreement also establishes that the defendants –

that is, Northlands, Gilb, and Smith – agreed to "be solely liable

for and shall satisfy any and all <u>valid claims on PIP and other

first party benefits</u> asserted by USAA." (Dkt. No. 72-8 at 6)

(emphasis added).[8]

Thus, USAA has submitted unrebutted evidence that: (1) it has

made $136,792.18 in total payments to its insureds; (2) it is the

subrogee of its insureds; (3) its insureds received a $600,000 cash

settlement from the tortfeasor; and (4) the tortfeasor is

contractually obligated to satisfy any and all valid claims on PIP

benefits and other first party payments asserted by USAA. In all,

USAA has offered legally sufficient evidence to establish that it

has a lawful right of subrogation for the PIP and property damage

payments it made in connection with the July 2008 collision. The

defendants have offered nothing to rebut that conclusion beyond the

argument that the subrogation clauses in the Ammenmuller and

---

[8]     The 2011 settlement agreement does not contain a reservation
of rights by Northlands against its insureds, or against the settling
plaintiffs in that case. <u>See</u> (Dkt. No. 72-8). Further, while the settling
plaintiffs "agree[d] to defend, indemnify and hold harmless [Gilb, Smith,
P.H. One Trucking, and Northland] from any and all loss, damage, expense,
or liability of whatever nature which might be asserted against [them]
by any person, firm, corporation or other entity arising out of the
allegations [in that suit]," that indemnification agreement went on to
explicitly exempt any claims that might arise against as a result of this
suit. <u>Id.</u> at 6.

USAA v. SMITH et al                                          1:10CV115

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR SUMMARY JUDGMENT [DKT. NO. 71] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 74]**

Cerabone policies are contrary to New Jersey public policy. Having

rejected that argument, the Court grants summary judgment to USAA.


**V.**

Therefore, for the reasons stated, the Court:

(1)  **DENIES** the motion for summary judgment (dkt. no. 74) of the

defendants; and

(2)  **GRANTS** the motion for summary judgment (dkt. no. 71) of the

plaintiff.

Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of

Court to enter a separate judgment order against the defendants in

the amount of $136,792.18, and to transmit copies of both orders to

counsel of record.

It is so **ORDERED**.

DATED: September 12, 2013


                                    /s/ Irene M. Keeley
                                    IRENE M. KEELEY
                                    UNITED STATES DISTRICT JUDGE